UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD HARRIS,

      Plaintiff,

v().                                      Case No. 3:22-cv-1155-MMH-JBT

ASST. WARDEN GOODWIN and
C.O. FOSTER,

      Defendants.
_____

# ORDER

## I. Status

Plaintiff Richard Harris, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on October 24, 2022,[1] by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1)[2] pursuant to 42 U.S.C. § 1983. Harris is proceeding on an amended complaint (AC; Doc. 7) with exhibits (Docs. 7-1 through 7-2). In the AC, Harris names Assistant Warden Goodwin and Officer Foster as Defendants. He raises claims of Eighth Amendment deliberate indifference against both Defendants and

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

First Amendment retaliation against Foster. AC at 4. Harris requests monetary damages, as well as declaratory and injunctive relief. Id.

This matter is before the Court on Goodwin's Motion to Dismiss. See Motion to Dismiss (Motion; Doc. 18). In support of the Motion, Goodwin has submitted exhibits. See Docs. 18-1 through 18-3. Harris filed a response in opposition to the Motion. See Plaintiff's Response to Defendant's Motion to Dismiss Memorandum of Law Incorporated (Response; Doc. 25). He also submitted exhibits. See Docs. 25-1 through 25-2. Thus, the Motion is ripe for review.

## II. Harris's Allegations[3]

Harris asserts that, on April 16, 2022, between 12:00 a.m. and 12:30 a.m., he notified Foster, the booth technician in the O-dormitory officer's station, that he was experiencing chest pain. AC at 2. According to Harris, Foster told him that he could not "go anywhere until after court[,] which was more than 30 minutes away and takes an hour or more to complete." Id. Harris alleges that he returned to wing 2 of O-dormitory and sat on a bench in the dayroom. Id. After approximately fifteen to twenty minutes, Harris "passed

---

[3] In considering Goodwin's Motion, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to Harris, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the AC, and may well differ from those that ultimately can be proved.

2

out" and had a seizure. Id. Harris maintains that Nurse Angela Wilson was called to O-dormitory; she placed him on a stretcher and transported him to medical. Id. According to Harris, he told Nurse Wilson that he had chest pain for thirty minutes before the seizure. Id. Nurse Wilson asked Sergeant Folsom, "the only other officer working O-dorm with C.O. Foster," why he did not notify her about Harris's chest pain. Id. Sergeant Folsom responded that Harris "must have told defendant, C.O. Foster, who never mentioned the chest pains [to Sergeant Folsom]." Id.

Harris asserts that he submitted a grievance about the incident on April 17, 2022. Id. On April 20, 2022, Sergeant R.E. Lindblade allegedly escorted Harris from O-dormitory to his office, where he had the April 17th grievance. Id. at 3. Sergeant Lindblade told Harris that "if he didn't stop with the grievances and lawsuits, that he would be forced to put his hands on (physically assault) [Harris]." Id. Harris subsequently received a response to his April 17th grievance, which stated that the cameras did not show him having a seizure and that Foster had no knowledge of the incident. Id. According to Harris, he made two copies of Nurse Wilson's report to attach to his appeal of the April 17th grievance and to a separate grievance for falsification of documents. Id. Harris maintains that Sergeant Lindblade "carried out his threats of physical

3

abuse" on May 12, 2022, and further threatened "to sodomize [Harris] with his walking cane, if he continue[d] writing grievances." Id.

Harris contends that Foster was deliberately indifferent to his serious medical need in violation of the Eighth Amendment when she ignored his chest pain. Id. at 4. He further asserts that Foster's deliberate indifference constituted retaliation for Harris's grievances against prison officials. Id. Harris asserts that Goodwin violated the Eighth Amendment when he "fail[ed] to take action to curb the deliberate indifference of C.O. Foster" and falsified documents to "cover it up." Id.

### III. Summary of the Arguments

In his Motion, Goodwin argues that the Court should dismiss the claim against him because: (1) Harris failed to properly exhaust his administrative remedies; (2) Harris fails to state a claim for relief; (3) Goodwin, as a supervisory official, is not liable under 42 U.S.C. § 1983; (4) Harris is not entitled to declaratory or injunctive relief; and (5) the Eleventh Amendment entitles Goodwin to immunity. Motion at 5–23. Harris responds that the Court should not dismiss his claim because: (1) he exhausted his administrative remedies, and (2) he states a plausible claim for relief. Response at 1–6.

## IV. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[4] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). A prisoner such as Harris, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[5] 286 F.3d, at 1024 (emphasis in original).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084

---

[5] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

(11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322–23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Goodwin bears "the burden of proving that [Harris] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. <u>See</u> <u>Turner</u>, 541 F.3d at 1081. In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. <u>Id.</u> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. <u>Id.</u> at 1082–83; <u>see also</u> <u>id.</u> at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in <u>Turner</u>, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the

7

parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838–39 (11th Cir. 2020). Here, Goodwin submitted declarations and grievance records as exhibits to his Motion. See Docs. 18-1 through 18-3. When neither party requests an evidentiary hearing, courts may decide a motion to dismiss on the basis of affidavits and other documents. Bryant, 530 F.3d at 1377 n.16. Here, the parties do not request an evidentiary hearing. Thus, the Court considers the grievance records solely for purposes of addressing the parties' competing contentions regarding exhaustion. In evaluating whether Harris has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

### B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies,

8

a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal

9

grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### C. The Parties' Positions Regarding Exhaustion

In the AC, Harris asserts that he filed an informal grievance (#231-2204-

10

0108) on April 17, 2022, at Suwannee Correctional Institution (Suwannee CI) concerning the pertinent events. AC at 5. He alleges that, as a result of the informal grievance, Sergeant Lindblade threatened him "with physical abuse" if he continued to exhaust his administrative remedies. Id. According to Harris, he pursued an appeal of the informal grievance, but "[t]he appeal was not even processed, a common practice at Suwannee C.I. Annex." Id. After Harris filed the appeal, Sergeant Lindblade "carried out his threats of physical abuse . . . and made further threats. . . ." Id. Based on the above, Harris argues the grievance process was unavailable to him. Id.

Goodwin contends that Harris failed to properly exhaust his administrative remedies. Motion at 13. He asserts that while Harris filed an informal grievance, he failed to pursue a grievance appeal. Id. With his Motion, Goodwin provides declarations and records regarding Harris's exhaustion efforts. See Doc. 18-1 through 18-3. In her declaration, Magen Stofel, a grievance coordinator at Suwannee CI, avers that Harris submitted four "Appeals grievances" between April 14, 2022, and June 15, 2022. Doc. 18-1 at 3. She states that three of the grievance appeals were returned for failure to comply with Rule 33-103.014, and the remaining grievance appeal was denied. Id. Stofel maintains that Harris "filed no formal grievances or appeals regarding alleged abuse." Id. In a sworn declaration, Lawanda Sanders, an

11

operation analyst for the FDOC Bureau of Policy Management and Inmate Grievance Appeals, confirms these findings. Doc. 18-2 at 2–3. A printout from the FDOC inmate grievance database reflects Harris failed to file any appeals grievances between June 16, 2022, and November 18, 2022. Id. at 4.

In addition, Goodwin attaches as an exhibit the informal grievance (#231-2204-0108) that Harris submitted on April 17, 2022:

> On 4/16/22, between the times of 12 a.m. – 1:30 a.m. (the cameras of O2 dayroom will confirm, which I call as witness), I went to the officers stations [and] to the booth technician, C.O. Foster that I had a medical emergency [and] was having chest pains. She told me, "It's finna [sic] be court [and] I ain't going no where until after court," and sent me back in wing 2. I sat on the bench in the dayroom of O2 for 15 to 20 mins without court being called or even recall, before I passed out [and] had a seizure. The nurse came [and] got me on a stretcher [and] took me to medical [and] gave me medication for my chest pains [and] something else to lower my blood pressure. C.O. Foster's actions showed a deliberate indifference to my health [and] safety [and] by not following proper protocol placed me at risk to have a stroke or heart attack. She's in direct violation of 33-208.002(8), as well as my U.S. Constitutional Eighth Amendment Right. A copy of this grievance has been made [and] will be attached to my Complaint.

Doc. 18-3 at 2. On April 23, 2022, Suwannee CI denied the grievance:

> Camera was reviewed and does not support your allegations. Officer Foster was interviewed and has no knowledge of your allegations.

Id.

Harris responds that, after Sergeant Lindblade threatened him for filing the April 17th grievance, he "began to have copies of his grievances and their attachments, made by [the] law library (before submitting them; so he'd have proof) as exhibits to his motions." Response at 3. He asserts that, on May 11, 2022, he made copies at the law library of two grievances before he submitted them "to the institution[']s lock box": an informal grievance about falsifying documents and the appeal of his April 17th grievance. Id. at 4. The next day, May 11, 2022, Sergeant Lindblade allegedly assaulted Harris. Id. According to Harris, Sergeant Lindblade's threats rendered the grievance process unavailable. See id. at 3. Moreover, he argues that the grievance process operates "as a simple dead end, with prison officials unable or consistently unwilling to provide any relief to aggrieved inmates. . . ." Id.

### D. Turner Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Response and accept as true Harris's allegations. See Whatley, 802 F.3d at 1209. If Harris's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. See id. Goodwin asserts that although Harris filed an informal grievance, he failed to pursue an appeal. Motion at 13. Therefore, he contends that Harris did not properly exhaust administrative remedies because he did not comply with the FDOC's

13

grievance procedure. See id. Harris responds that he filed an informal grievance on April 17, 2022, and an appeal on May 11, 2022. Response at 3–4. He maintains that he never received a response to the grievance appeal, id. at 4, and he did not have available administrative remedies, id. at 3. Accepting Harris's view of the facts as true, the Court cannot dismiss the AC at the first step of the Turner analysis.

### E. Turner Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court next turns to the second prong of the Turner analysis. On review of the record, the Court finds that Goodwin has met his burden of establishing that Harris failed to properly exhaust his administrative remedies. The grievance records submitted by Goodwin demonstrate that Harris filed an informal grievance concerning the pertinent events. Doc. 18-3 at 2. However, he failed to file a formal grievance or grievance appeal. See Docs. 18-1 at 2–3; 18-2 at 2–4. While Harris alleges that he pursued an appeal of the informal grievance, his assertion is unavailing. Harris neither summarizes the contents of the appeal grievance that he allegedly submitted, nor does he say how or why, beyond mere speculation, he believes it was not "processed." AC at 5. Harris states that he began to make copies of his grievances, including the alleged appeal, so he would have proof that he

submitted them. Response at 3. Yet, Harris does not provide the Court with a copy of the grievance appeal. As such, the Court finds Harris did not appeal the informal grievance, and in failing to do so, he did not complete the requisite steps to exhaust as determined by state law. See Dimanche, 783 F.3d at 1211 (recognizing that the FDOC uses a three-step process for inmate grievances that includes an informal grievance, formal grievance, and appeal). Therefore, Harris did not properly exhaust his administrative remedies because he failed to comply with FDOC procedural requirements.

Next, Harris contends the grievance process was unavailable to him because prison officials threatened him. He specifically asserts that Sergeant Lindblade threatened him twice about filing grievances and lawsuits. AC at 3. The Eleventh Circuit has recognized that "a prison official's serious threats of substantial retaliation against an inmate" for filing a grievance in good faith can make administrative remedies "unavailable." Turner, 541 F.3d at 1085. In doing so, the court explained that a prison official's serious threats of substantial retaliation will excuse the exhaustion requirement if two conditions are met:

> (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part

> of the grievance process that the inmate failed to exhaust.

Id. In determining whether a plaintiff has made this showing, a court may "consider[] [a plaintiff's] history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or . . . destroy his grievances." Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018). "While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020) (quoting Turner, 541 F.3d at 1085); id. at 1356 n.14 ("But once the [prison official] has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." (quoting Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018))).

Here, Goodwin has established that the FDOC has an administrative grievance process and that Harris failed to resort to the FDOC's established grievance process. Therefore, the burden shifts to Harris to "demonstrate that the [FDOC's] grievance procedure was 'subjectively' and 'objectively' unavailable to him." Id. at 1356. Assuming Sergeant Lindblade's threats would deter a reasonable inmate from using the grievance process, they did not

16

actually deter Harris. He contends Sergeant Lindblade threatened him on April 20, 2022, and assaulted him on May 12, 2022. AC at 2–3. But Harris filed an informal grievance about falsified documents on May 11, 2022, Doc. 25-1 at 3–4, and filed four grievance appeals between April 14, 2022, and June 15, 2022, Docs. 18-1 at 2–3; 18-2 at 2–3. As such, Harris was not actually deterred from exercising his administrative remedies. Moreover, even if Harris was subjectively deterred from filing grievances at Suwannee CI, he could have bypassed the institutional level and submitted a grievance of reprisal directly with the FDOC Secretary's Office in a sealed envelope. See Fla. Admin. Code R. 33-103.007(3)(a). Harris does not contend that he was unaware of his ability to bypass the institutional grievance process. To the contrary, Harris's allegations in the AC suggest he is familiar with the grievance process. See, e.g., AC at 2 (alleging Foster disliked him for "writing grievances and bringing legal claims against F.D.O.C. staff"). Nevertheless, it appears that he did not submit such a grievance.

Harris also argues that the grievance process operates as a dead end because he has filed sixty-six grievances since 2017, but prison officials have only approved five grievances. Response at 5. However, Harris points to no facts suggesting that any of the grievances which prison officials denied had merit or were improperly denied. And, "the exhaustion requirement cannot be

17

waived based upon the prisoner's belief that pursuing administrative procedures would be futile." <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam). Based on the above, the Court finds Harris had available administrative remedies that he failed to exhaust before initiating this lawsuit. Accordingly, Goodwin's Motion to Dismiss is due to be granted based upon the contention that Harris failed to exhaust the required administrative remedies.

## V. Goodwin's Remaining Arguments

Because Harris's claims against Goodwin are due to be dismissed for failure to satisfy the PLRA's exhaustion requirement, the Court need not address his remaining arguments. Therefore, as to these issues, the Motion is due to be denied without prejudice.

## VI. Dismissal of Claims Against Foster

The Court addresses the status of Harris's claims against the remaining Defendant, Foster. On December 1, 2022, the Court directed service of process on all Defendants. <u>See</u> Order (Doc. 8). The FDOC advised the Court that Foster was no longer an employee, <u>see</u> Doc. 23, and on March 27, 2022, the FDOC filed a sealed notice providing Foster's full name and last known address, <u>see</u> Doc. S-26. The Court redirected service of process on Foster at her last known address, which the United States Marshals Service (USMS) returned as

18

unexecuted. See Doc. S-28. Thereafter, the Court directed Harris, by June 1, 2023, to show cause why the claims against Foster should not be dismissed from this action. See Order to Show Cause (Doc. 29). Harris responded to the Court's Order, arguing that he lacks the resources available to the FDOC and that the FDOC should account for its employee's actions. See Response to Order to Show Cause (Doc. 33). He also has requested that the Court enter default judgment against Foster "for hiding from [the] process server." Plaintiff's Show of Cause and Request for Entry of Default Against Defendant Foster (Doc. 49).

Upon review of the record, the Court finds the FDOC and the USMS have used reasonable efforts to effect service of process on Foster. See Richardson v. Johnson, 598 F.3d 734, 740 (11th Cir. 2010) (finding that district court must determine whether a former prison employee can be located with reasonable effort, and if efforts do not prove successful, may properly dismiss claims against unserved defendant). After the FDOC advised the Court that Foster was no longer an FDOC employee, it provided the Court with her full name and last known address. The USMS then used reasonable efforts to serve Foster at that last known address, which proved unsuccessful. Moreover, beyond Harris's conclusory, self-serving allegation, no evidence suggests that Foster has avoided service intentionally. Thus, Harris's request for entry of

19

default is due to be denied, and the Court will dismiss without prejudice the claims against Foster.

Accordingly, it is now

**ORDERED:**

1. Defendant Assistant Warden Goodwin's Motion to Dismiss (Doc. 18) is **GRANTED** to the extent he seeks dismissal of the claims against him based on Harris's failure to exhaust administrative remedies. In all other respects, the Motion is denied without prejudice.

2. The claims against Defendant Officer Foster are **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of January, 2024.

MARCIA MORALES HOWARD
United States District Judge

Jax-9 12/18
c:   Richard Harris, #L24755
     Counsel of record

20